# EXHIBIT A

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

Allegheny _____ **County**

| | |
|---|---|
| Docket No: | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S E C T I O N   A**

**Commencement of Action:**
- Complaint          Writ of Summons          Petition
- Transfer from Another Jurisdiction          Declaration of Taking

**Are money damages request**   **Yes**   **No**

**Dollar Amount Requested:**
(check one)          within arbitration limits
                     outside arbitration limits

Name of Plaintiff/Appellant's Attorney: _Kevin Tucker, East End Trial Group LLC, ktucker@eastendtrialgroup.com_

**Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**Nature of the Case**: Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**S E C T I O N   B**

**TORT** *(do not include Mass Tort)*
- Intentional
- Malicious Prosecution
- Motor Vehicle
- Nuisance
- Premises Liability
- Product Liability *(does not include mass tort)*
- Slander/Libel/ Defamation
- Other:
  Unfair Trade Practices

**MASS TORT**
- Asbestos
- Tobacco
- Toxic Tort - DES
- Toxic Tort - Implant
- Toxic Waste
- Other:

**PROFESSIONAL LIABLITY**
- Dental
- Legal
- Medical
- Other Professional:

**CONTRACT** *(do not include Judgment)*
- Buyer Plaintiff
- Debt Collection: Credit Card
- Debt Collection: Other

- Employment Dispute:
  Discrimination
- Employment Dispute: Other

- Other:

**REAL PROPERTY**
- Ejectment
- Eminent Domain/Condemnation
- Ground Rent
- Landlord/Tenant Dispute
- Mortgage Foreclosure: Residential
- Mortgage Foreclosure: Commercial
- Partition
- Quiet Title
- Other:

**CIVIL APPEALS**
- Administrative Agencies
  - Board of Assessment
  - Board of Elections
  - Dept. of Transportation
  - Statutory Appeal: Other

  - Zoning Board
  - Other:

**MISCELLANEOUS**
- Common Law/Statutory Arbitration
- Declaratory Judgment
- Mandamus
- Non-Domestic Relations
- Restraining Order
- Quo Warranto
- Replevin
- Other:

*Updated 1/1/2011*

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| DANIEL GARCIA, individually and on behalf of all others similarly situated, | CIVIL DIVISION |
| Plaintiff, | No. |
| v. | CLASS ACTION |
| WALGREEN CO., and WALGREEN EASTERN CO., INC., | **CLASS ACTION COMPLAINT** |
| Defendants. | Filed on behalf of Plaintiff: Daniel Garcia |

Counsel of record for Plaintiff:

Kevin W. Tucker (He/Him/His)
Pa. No. 312144
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
ktucker@eastendtrialgroup.com

*Other Attorneys On Signature*

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| DANIEL GARCIA, individually and on behalf of all others similarly situated, | CIVIL DIVISION |
| | No. |
| Plaintiff, | |
| | CLASS ACTION |
| v. | |
| WALGREEN CO., and WALGREEN EASTERN CO., INC., | |
| Defendants. | |

<u>**NOTICE TO DEFEND**</u>

**YOU HAVE BEEN SUED IN COURT.** If you wish to defend against the claims set forth in the following pages, you must take action within **TWENTY (20)** days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYER REFERRAL SERVICE
Allegheny County Bar Association
11th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 261-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| DANIEL GARCIA, individually and on behalf of all others similarly situated, | CIVIL DIVISION |
| Plaintiff, | No. |
| v. | CLASS ACTION |
| WALGREEN CO., and WALGREEN EASTERN CO., INC., | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiff Daniel Garcia ("Plaintiff" or "Garcia"), individually and on behalf of all others similarly situated, brings this action against Defendants Walgreen Co. and Walgreen Eastern Co., Inc. ("Defendants" or "Walgreens"), and alleges as follows:

**NATURE OF THE ACTION**

1.      This action seeks statutory damages, attorneys' fees, and costs against Defendants for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-1, *et seq.*

**JURISDICTION AND VENUE**

2.      The Court has subject matter jurisdiction under 42 Pa. C.S. § 931.

3.      The Court has personal jurisdiction over Defendants under 42 Pa. C.S. § 5301.

4.      Venue is proper under Pa. R. Civ. P. 2179 because Defendants regularly conduct business in this County, this is the County where the cause of action arose, and/or this is the County where the transactions or occurrences took place out of which the cause of action arose.

1

5.      Principles of comity and the Tax Injunction Act, U.S.C. § 1341, require the state courts of the Commonwealth of Pennsylvania to address matters involving state tax laws and regulations. *See Farneth v. Wal-Mart Stores, Inc.*, No. 13-1062, 2013 WL 6859013 (W.D. Pa. Dec. 30, 2013).

## PARTIES

6.      Garcia is a natural person over the age of eighteen. He resides in Allegheny County, Pennsylvania.

7.      Walgreen Co. is an Illinois corporation headquartered in Deerfield, Illinois.

8.      Walgreen Eastern Co., Inc. is a New York corporation headquartered in Deerfield, Illinois.

9.      Defendants operate brick-and-mortar and online retail stores under the brand name Walgreens.

10.     Defendants own, operate, or manage at least 200 brick-and-mortar retail locations in Pennsylvania.

## FACTUAL ALLEGATIONS

11.     Retailers cannot charge or collect sales tax on protective face masks or face coverings because they are nontaxable.[1]

---

[1] Ex. 1, Governor Tom Wolf, *Proclamation of Disaster Emergency* (Mar. 6, 2020 and extended on June 3, 2020, Aug. 31, 2020, Nov. 24, 2020, and Feb. 19, 2021). Ex. 2, Pennsylvania Dept. of Revenue, *Masks and Ventilators* (Apr. 23, 2020) ("Protective face masks that are sold at retail are exempt from Pennsylvania sales tax during the emergency disaster declaration issued on March 6, 2020 by Governor Wolf."); Ex. 3, Pennsylvania Dept. of Revenue, *Masks and Ventilators* (updated Oct. 30, 2020) ("Are masks and ventilators subject to PA sales tax? No, face masks (cloth and disposable) are exempt from Pennsylvania sales tax."); and Ex. 4, Pennsylvania Dept. of Revenue, *Sales and Tax Bulletin 2021-01* (Jan. 20, 2021) ("In response to consumer demand for medical masks outpacing supply and leading consumers to use non-medical masks and face coverings for medical purposes, namely to prevent and control the

2

12.     At all relevant times, Defendants sold protective face masks and charged tax on these purchases.

13.     Defendants knew or should have known that it was impermissible to charge or collect sales tax on protective face masks.

14.     Garcia bought a protective face mask from Defendants at a retail store located at 1701 William Flynn Hwy, Glenshaw, PA 15116, on October 22, 2020.

15.     Defendants advertised the mask Garcia purchased as costing $8.99.

16.     Yet Defendants charged, and Garcia paid, $9.62 for the mask.

17.     The extra $0.63 equals 7% of the mask's advertised price.

18.     Garcia did not discover the extra $0.63 charge until reviewing his receipt.[2]

19.     The receipt identified the extra $0.63 charge as sales tax.

20.     Defendants operate, control, maintain, and are otherwise responsible for the POS systems in their brick-and-mortar locations and online stores.

21.     Defendants' POS systems regularly charge and collect sales tax on protective face masks sold at Defendants' brick-and-mortar locations in Pennsylvania and online to persons in Pennsylvania.

22.     By charging and collecting sales tax on protective face masks, Defendants denied Garcia and the Class the money and the benefit of the use and retention of money they otherwise would have had, benefited from, or held.

23.     Garcia and the Class suffered harm as a result of Defendants' conduct.

---

spread of COVID-19, the department responded with a statement that any non-medical cloth or disposable mask purchased for use as a means of protection against the virus was not subject to sales or use tax.").

[2] Ex. 5, Walgreens Receipt.

## CLASS ACTION ALLEGATIONS

24.     Garcia brings this action individually and on behalf of all others similarly situated under Rules 1702, 1708, and 1709 of the Pennsylvania Rules of Civil Procedure.

25.     Garcia seeks to certify the following Class: "All persons who purchased a protective face mask or face covering from Defendants at a retail store in Pennsylvania, or from Defendants over the internet and arranged for delivery of the protective face mask into Pennsylvania, and who were charged an amount purporting to represent sales tax on that purchase since March 6, 2020."

26.     Garcia reserves the right to expand, narrow, or otherwise modify the Class as the litigation continues and discovery proceeds.

27.     Pa. R. Civ. P. 1702(1), 1708(a)(2): The Class is so numerous that joinder of its Class Members is impracticable. The United States Census Bureau estimates there are 12,801,989 individuals residing in Pennsylvania as of July 1, 2019.[3] All of these individuals have been ordered to wear protective face masks or face coverings to prevent the spread of COVID-19 since at least April 15, 2020.[4] Given Pennsylvania's population, orders requiring Pennsylvania residents to wear protective face masks in public, and the size of Defendants' businesses, which operate brick-and-mortar retail locations in Pennsylvania and online stores that sell protective face masks or face coverings into Pennsylvania, there likely are hundreds or thousands of Members of the Class. Since each of the claims of the Class Members is substantially identical, and the Class Members request

---

[3]     U.S.     Census     Bureau,     *QuickFacts     Pennsylvania*,     available     at https://www.census.gov/quickfacts/PA (last accessed Mar. 4, 2021).
[4] Ex. 6, Pennsylvania Dept. of Health, *Order of the Secretary of the Pennsylvania Dept. of Health Directing Public Health Safety Measures for Businesses Permitted to Maintain In-person Operations*, p. 5 (April 15, 2020); Ex. 7, Pennsylvania Dept. of Health, *Order of Pennsylvania Dept. of Health Requiring Universal Face Coverings*, Section 2 (July 1, 2020).

substantially similar relief, centralizing the Class Members' claims in a single proceeding likely is the most manageable litigation method available.

28.     Pa. R. Civ. P. 1702(2), 1708(a)(1): Garcia and each Member of the Class share numerous common questions of law and fact that will drive the resolution of the litigation and predominate over any individual issues. For example, there is a single common answer to the question of whether Defendants violated the UTPCPL by charging Class Members 7% or more than the advertised price for protective face masks. The answer to this question is the same for Garcia and each Member of the Class, and Garcia and each Member of the Class require the same proof to answer this question. This question, and other common questions of law and fact, predominate over any individual issues.

29.     Pa. R. Civ. P. 1702(3): Garcia's claims are typical of the claims of each Member of the Class because the claims are based on the same legal theories and arise from the same conduct.

30.     Pa. R. Civ. P. 1702(4), 1709: Garcia is an adequate representative of each Member of the Class because the interests of Garcia and each Member of the Class align. Garcia will fairly, adequately, and vigorously represent and protect the interests of each Member of the Class and has no interest antagonistic to any Member of the Class. Garcia retained counsel who are competent and experienced in the prosecution of class action litigation generally and UTPCPL litigation specifically. Garcia has or can acquire adequate financial resources to assure that the interests of each Member of the Class will not be harmed.

31.     Pa. R. Civ. P. 1708(a)(3), (6), (7): Given the complexity and nature of the issues presented and the relief requested, the expense and time necessary to obtain such relief, and the anticipated recovery and relief that Garcia and each Member of the Class may obtain, the class action mechanism is by far the preferred and most efficient litigation mechanism to adjudicate the

claims of Garcia and each Member of the Class. Additionally, requiring Garcia and each Member of the Class to file individual actions would impose a crushing burden on the court system. Class treatment presents far fewer management difficulties and provides benefits of a single adjudication and economies of scale.

32.     <u>Pa. R. Civ. P. 1708(a)(4):</u> Based on the knowledge of Garcia and undersigned counsel, there are no similar cases currently pending against Defendants. However, there are similar actions pending in this court against other parties. *See Garcia v. American Eagle Outfitters, Inc., et al.,* GD-20-11057.

33.     <u>Pa. R. Civ. P. 1708(a)(5):</u> This forum is appropriate for this litigation, as Defendants regularly conduct business in this County and all or part of the claims arose in this County.

**<u>COUNT I</u>**
**Violation of the Unfair Trade Practices and Consumer Protection Law**
**73 Pa. Stat. § 201-1, *et seq.***

34.     This claim is brought individually and on behalf of the Class.

35.     Garcia and Defendants are persons, the protective face masks are goods purchased for personal, family, and/or household use, and Defendants' conduct described herein is trade or commerce under the UTPCPL. 73 Pa. Stat. § 201-2(2)-(3), 201-9.2.

36.     Defendants' conduct described herein constitutes unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because: i) Defendants represented that goods have characteristics they do not have; ii) Defendants advertised goods with intent not to sell them as advertised; and iii) Defendants engaged in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(v), (ix), (xxi).

37.     Defendants' use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce violates 73 P.S. § 201-3.

38.     Garcia and the Class Members lost money or property as a result of Defendants'

violations and therefore are entitled to one hundred dollars ($100) per violation under 73 P.S. 201-

9.2, as well as reasonable costs and attorneys' fees and such additional relief the Court deems

necessary and proper.

## JURY TRIAL DEMANDED

Garcia requests a jury trial on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Garcia prays for the following relief:

a.      An order certifying the proposed Class, appointing Garcia as
        representative of the proposed Class, and appointing undersigned
        counsel as counsel for the proposed Class;

b.      An order awarding one hundred dollars ($100.00) per violation of
        the UTPCPL, and not a refund of the overcharges that Defendants
        misrepresented as sales tax;

c.      An order awarding attorneys' fees and costs; and

d.      An order awarding all other relief that is just, equitable and
        appropriate.

                            Respectfully Submitted,


Dated: March 9, 2021                    _/s/ Kevin W. Tucker_
                                        Kevin W. Tucker (He/Him/His)
                                        Pa. No. 312144
                                        Kevin J. Abramowicz
                                        Pa. No. 320659
                                        EAST END TRIAL GROUP LLC
                                        6901 Lynn Way, Suite 215
                                        Pittsburgh, PA 15208
                                        Tel. (412) 877-5220
                                        Fax. (412) 626-7101
                                        ktucker@eastendtrialgroup.com
                                        kabramowicz@eastendtrialgroup.com

Jason M. Leviton (*pro hac* forthcoming)
Lauren Godless (*pro hac* forthcoming)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel. (617) 398-5600
jason@blockleviton.com
lauren@blockleviton.com
*Counsel for Plaintiff*

## <u>VERIFICATION</u>

I, Daniel Garcia, am fully familiar with the facts set forth in this Complaint and believe them to be true and correct to the best of my knowledge, information, and belief. I understand any false statements herein are made subject to the penalties of 18 Pa. C.S § 4904, relating to unsworn falsification to authorities.

Respectfully Submitted,

Dated: March 8, 2021

Daniel Garcia

Exhibit 1

Governor Tom Wolf, *Proclamation of Disaster Emergency* (Mar. 6, 2020 and extended on June 3, 2020, Aug. 31, 2020, Nov. 24, 2020, and Feb. 19, 2021)

COMMONWEALTH OF PENNSYLVANIA

OFFICE OF THE GOVERNOR

### PROCLAMATION OF DISASTER EMERGENCY

### March 6, 2020

*WHEREAS*, a novel coronavirus (now known as "COVID-19") emerged in Wuhan, China, began infecting humans in December 2019, and has since spread to 89 countries, including the United States; and

*WHEREAS*, the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared COVID-19 a "public health emergency of international concern," and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency; and

*WHEREAS*, the Commonwealth of Pennsylvania ("Commonwealth") has been working in collaboration with the CDC, HHS, and local health agencies since December 2019 to monitor and plan for the containment and subsequent mitigation of COVID-19; and

*WHEREAS*, on February 1, 2020, the Commonwealth's Department of Health activated its Department Operations Center at the Pennsylvania Emergency Management Agency's headquarters to conduct public health and medical coordination for COVID-19 throughout the Commonwealth; and

*WHEREAS*, on March 4, 2020, the Director of the Pennsylvania Emergency Management Agency ordered the activation of its Commonwealth Response Coordination Center in support of the Department of Health's Department Operations Center, to maintain situational awareness and coordinate the response to any potential COVID-19 impacts across the Commonwealth; and

*WHEREAS*, as of March 6, 2020, there are 233 confirmed and/or presumed positive cases of COVID-19 in the United States, including 2 presumed positive cases in the Commonwealth; and

*WHEREAS*, while it is anticipated that a high percentage of those affected by COVID-19 will experience mild influenza-like symptoms, COVID-19 is a disease capable of causing severe symptoms or loss of life, particularly to older populations and those individuals with pre-existing conditions; and

*WHEREAS*, it is critical to prepare for and respond to suspected or confirmed cases in the Commonwealth and to implement measures to mitigate the spread of COVID-19; and

*WHEREAS*, with 2 presumed positive cases in the Commonwealth as of March 6, 2020, the possible increased threat from COVID-19 constitutes a threat of imminent disaster to the health of the citizens of the Commonwealth; and

*WHEREAS*, this threat of imminent disaster and emergency has the potential to cause significant adverse impacts upon the population throughout the Commonwealth; and

*WHEREAS*, this threat of imminent disaster and emergency has already caused schools to close, and will likely prompt additional local measures, including affected county and municipal governments to declare local disaster emergencies because of COVID-19; and

*supplementation of emergency resources and mutual aid to the county and municipal governments of this Commonwealth and to require the activation of all applicable state, county, and municipal emergency response plans.*

*NOW THEREFORE, pursuant to the provisions of Subsection 7301(c) of the Emergency Management Services Code, 35 Pa. C.S. § 7101, et seq., I do hereby proclaim the existence of a disaster emergency throughout the Commonwealth.*

*FURTHER, I hereby authorize the Pennsylvania Emergency Management Agency Director or his designee, to assume command and control of all statewide emergency operations and authorize and direct that all Commonwealth departments and agencies utilize all available resources and personnel as is deemed necessary to cope with this emergency situation.*

*FURTHER, I hereby transfer up to $5,000,000 in unused appropriated funds to the Pennsylvania Emergency Management Agency for Emergency Management Assistance Compact expenses related to this emergency, to be decreased as conditions require, pursuant to the provisions of section 7604(a) of the Emergency Management Services Code, 35 Pa. C.S. § 7604(a). In addition, I hereby transfer up to $20,000,000 in unused appropriated funds, to be decreased as conditions require, to the Pennsylvania Emergency Management Agency pursuant to section 1508 of the Act of April 9, 1929 (P.L.343, No. 176) (the Fiscal Code), 72 P.S. § 1508. The aforementioned funds shall be used for expenses authorized and incurred related to this emergency. These funds shall be credited to a special account established by the Office of the Budget. I hereby direct that any funds transferred herein that remain unused after all costs related to this emergency have been satisfied shall be returned to the General Fund.*

*FURTHER, All Commonwealth agencies purchasing supplies or services in response to this emergency are authorized to utilize emergency procurement procedures set forth in Section 516 of the Commonwealth Procurement Code, 62 Pa. C.S. § 516. This Proclamation shall serve as the written determination of the basis for the emergency under Section 516.*

*FURTHER, I hereby suspend the provisions of any regulatory statute prescribing the procedures for conduct of Commonwealth business, or the orders, rules or regulations of any Commonwealth agency, if strict compliance with the provisions of any statute, order, rule or regulation would in any way prevent, hinder, or delay necessary action in coping with this emergency. Commonwealth agencies may implement emergency assignments without regard to procedures required by other laws, except mandatory constitutional requirements, pertaining to performance of public work, entering into contracts, incurring of obligations, employment of temporary workers, rental of equipment, purchase of supplies and materials, and expenditures of public funds.*

*FURTHER, pursuant to the powers vested in me by the Constitution and laws of the Commonwealth pursuant to 51 Pa. C.S. § 508, I hereby authorize the Adjutant General of Pennsylvania to place on state active duty for the duration of the emergency disaster proclamation, such individuals and units of the Pennsylvania National Guard, for missions designated by the Pennsylvania Emergency Management Agency, as are needed to address the consequences of the aforementioned emergency.*

*FURTHER, I authorize the Commissioner of the Pennsylvania State Police to use all available resources and personnel in whatever manner he deems necessary during this emergency to assist the actions of the Pennsylvania Emergency Management Agency in addressing the consequences of the emergency.*

*FURTHER, I hereby authorize the Secretary of the Pennsylvania Department of Health, in her sole discretion, to suspend or waive any provision of law or regulation which the Pennsylvania Department of Health is authorized by law to administer or enforce, for such length of time as may be necessary to respond to this emergency.*

*the Pennsylvania Department of Education is authorized by law to administer or enforce, for such length of time as may be necessary to respond to this emergency.*

*FURTHER, if investigations made on my behalf determine that the Commonwealth needs greater flexibility in the application of state and federal motor carrier regulations to accommodate truck drivers involved in emergency activities during this emergency, I hereby direct the Commonwealth Department of Transportation to waive or suspend any laws or federal or state regulations related to the drivers of commercial vehicles.*

*FURTHER, I hereby direct that the applicable emergency response and recovery plans of the Commonwealth, counties, municipalities and other entities be activated as necessary and that actions taken to implement those plans be coordinated through the Pennsylvania Emergency Management Agency.*

*STILL FURTHER, I hereby urge the governing bodies and executive officers of all political subdivisions affected by this emergency to act as necessary to meet the current exigencies as legally authorized under this Proclamation, namely, by the employment of temporary workers, by the rental of equipment, and by entering into such contracts and agreements as may be required to meet the emergency, all without regard to those time consuming procedures and formalities normally prescribed by law, mandatory constitutional requirement excepted.*



*GIVEN under my hand and the Seal of the Governor, at the City of Harrisburg, this sixth day of March in the year of our Lord two thousand twenty, and of the Commonwealth the two hundred and forty fourth.*

**TOM WOLF**
*Governor*

*Commonwealth of Pennsylvania*

# Governor's Office

## AMENDMENT TO
## PROCLAMATION OF DISASTER EMERGENCY

### June 3, 2020

WHEREAS, on March 6, 2020, I declared a disaster emergency due to the coronavirus disease 2019 (COVID-19) pandemic that is devastating the country, including the Commonwealth of Pennsylvania and its citizens;

WHEREAS, my Proclamation of Disaster Emergency of March 6, 2020, will automatically expire on June 4, 2020, unless renewed by Amendment;

WHEREAS, as of June 3, 2020, 72,894 persons have tested positive or meet the requirements to be considered as presumed probable cases for COVID-19 in the Commonwealth in all 67 counties, and 5,667 persons are reported to have died from the virus; and

WHEREAS, the COVID-19 pandemic continues to be of such magnitude or severity that emergency action is necessary to protect the health, safety and welfare of affected citizens in Pennsylvania.

NOW THEREFORE, pursuant to the provisions of section 7301(c) of the Emergency Management Services Code, 35 Pa. C.S. §7301(c), I do hereby order and direct as follows:

1. The Proclamation of Disaster Emergency of March 6, 2020, is renewed for a period of ninety days, and shall continue to apply to the Commonwealth of Pennsylvania.

2. All directives, authorized actions and provisions of the March 6, 2020, Proclamation of Disaster Emergency shall remain in full force and effect until either rescinded by me or terminated by law.

This Proclamation Amendment shall take effect immediately.

GIVEN under my hand and the Seal of the Governor, at the city of Harrisburg, on this third day of June two thousand twenty, the year of the commonwealth the two hundred and forty-fourth.

TOM WOLF
Governor

*Commonwealth of Pennsylvania*

## Governor's Office

### AMENDMENT TO
### PROCLAMATION OF DISASTER EMERGENCY

#### August 31, 2020

**WHEREAS**, on March 6, 2020, I declared a disaster emergency due to the coronavirus disease 2019 (COVID-19) pandemic that is devastating the country, including the Commonwealth of Pennsylvania and its citizens;

**WHEREAS**, the March 6, 2020, Proclamation of Disaster Emergency would have automatically expired by operation of law on June 4, 2020, unless further extended by my official action;

**WHEREAS**, I renewed the Proclamation of Disaster Emergency dated March 6, 2020, by Amendment to Proclamation of Disaster Emergency (1st Amendment) on June 3, 2020, for an additional ninety days;

**WHEREAS**, the June 3, 2020, Amendment to Proclamation is set to automatically expire by operation of law on September 1, 2020, unless further extended by my official action;

**WHEREAS**, as of August 31, 2020, 134,025 persons have tested positive or meet the requirements to be considered probable cases for COVID-19 in the Commonwealth in all 67 counties, and 7,495 persons are reported to have died from the virus; and

**WHEREAS**, the COVID-19 pandemic continues to be of such magnitude or severity that emergency action is necessary to protect the health, safety, and welfare of affected citizens in Pennsylvania.

**NOW THEREFORE**, pursuant to the provisions of section 7301(c) of the Emergency Management Services Code, 35 Pa. C.S. § 7301(c), I do hereby order and direct as follows:

1. The Proclamation of Disaster Emergency of March 6, 2020, renewed by Amendment to Proclamation of Disaster Emergency dated June 3, 2020, is renewed for a period of ninety days, and shall continue to apply to the Commonwealth of Pennsylvania.

2. All directives, authorized actions, and provisions of the March 6, 2020, Proclamation of Disaster Emergency and June 3, 2020, Amendment to Proclamation shall remain in full force and effect until either rescinded by me or terminated by law.

3. This Proclamation Amendment (2nd Amendment) shall take effect immediately.

*GIVEN under my hand and the Seal of the Governor, at the city of Harrisburg, on this thirty-first day of August two thousand twenty, the year of the commonwealth the two hundred and forty-fifth.*

*Tom Wolf*

**TOM WOLF**

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE GOVERNOR

*AMENDMENT TO*
*PROCLAMATION OF DISASTER EMERGENCY*

*November 24, 2020*

 **WHEREAS,** on March 6, 2020, I declared a disaster emergency due to the coronavirus disease 2019 (COVID-19) pandemic that is devastating the country, including the Commonwealth of Pennsylvania and its citizens; and

 **WHEREAS,** the March 6, 2020, Proclamation of Disaster Emergency was set to automatically expire by operation of law on June 4, 2020, unless further extended by my official action; and

 **WHEREAS,** I renewed the Proclamation of Disaster Emergency dated March 6, 2020, by Amendment to Proclamation of Disaster Emergency (1st Amendment) on June 3, 2020, for an additional ninety days; and

 **WHEREAS,** the June 3, 2020, Amendment to Proclamation was set to automatically expire by operation of law on September 1, 2020, unless further extended by my official action; and

 **WHEREAS,** I renewed the Proclamation of Disaster Emergency dated March 6, 2020, by Amendment to Proclamation of Disaster Emergency (2nd Amendment) on August 31, 2020, for an additional ninety days; and

 **WHEREAS,** the August 31, 2020, Amendment to Proclamation is set to automatically expire by operation of law on November 29, 2020, unless further extended by my official action; and

 **WHEREAS,** as of November 23, 2020, 314,401 persons have tested positive or meet the requirements to be considered probable cases for COVID-19 in the Commonwealth in all 67 counties, and 9,870 persons are reported to have died from the virus; and

 **WHEREAS,** the COVID-19 pandemic continues to be of such magnitude or severity that emergency action is necessary to protect the health, safety and welfare of affected citizens in Pennsylvania.

 **NOW THEREFORE,** pursuant to the provisions of section 7301(c) of the Emergency Management Services Code, 35 Pa. C.S. § 7301(c), I do hereby order and direct as follows:

1. *The Proclamation of Disaster Emergency dated March 6, 2020, renewed by Amendments to Proclamation of Disaster Emergency dated June 3, 2020, and August 31, 2020, is renewed for a period of ninety days, and shall continue to apply to the Commonwealth of Pennsylvania.*

2. *All directives, authorized actions and provisions of the March 6, 2020, Proclamation of Disaster Emergency and June 3, 2020, and August 31, 2020, Amendments to Proclamation shall remain in full force and effect until either rescinded by me or terminated by law.*

3. *This Proclamation Amendment (3rd Amendment) shall take effect immediately.*



*GIVEN under my hand and the Seal of the Governor, at the city of Harrisburg, on this twenty-fourth day of November two thousand twenty, the year of the commonwealth the two hundred and forty-fifth.*

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE GOVERNOR

*AMENDMENT TO*
*PROCLAMATION OF DISASTER EMERGENCY*

*February 19, 2021*

*WHEREAS, on March 6, 2020, I declared a disaster emergency due to the coronavirus disease 2019 (COVID-19) pandemic that is devastating the country, including the Commonwealth of Pennsylvania and its citizens; and*

*WHEREAS, the March 6, 2020, Proclamation of Disaster Emergency was set to automatically expire by operation of law on June 4, 2020, unless further extended by my official action; and*

*WHEREAS, I renewed the Proclamation of Disaster Emergency dated March 6, 2020, by Amendment to Proclamation of Disaster Emergency (1st Amendment) on June 3, 2020, for an additional ninety days; and*

*WHEREAS, the June 3, 2020, Amendment to Proclamation was set to automatically expire by operation of law on September 1, 2020, unless further extended by my official action; and*

*WHEREAS, I renewed the Proclamation of Disaster Emergency dated March 6, 2020, by Amendment to Proclamation of Disaster Emergency (2nd Amendment) on August 31, 2020, for an additional ninety days; and*

*WHEREAS, the August 31, 2020, Amendment to Proclamation was set to automatically expire by operation of law on November 29, 2020, unless further extended by my official action; and*

*WHEREAS, I renewed the Proclamation of Disaster Emergency dated August 31, 2020, by Amendment to Proclamation of Disaster Emergency (3rd Amendment) on November 24, 2020, for an additional ninety days; and*

*WHEREAS, the November 24, 2020, Amendment to Proclamation is set to automatically expire by operation of law on February 22, 2021, unless further extended by my official action; and*

*WHEREAS, as of February 18, 2021, 905,995 persons are reported to have tested positive or meet the requirements to be considered probable cases for COVID-19 in the Commonwealth in all 67 counties, and 23,413 persons are reported to have died from the virus; and*

*WHEREAS, the COVID-19 pandemic continues to be of such magnitude or severity that emergency action is necessary to protect the health, safety and welfare of affected citizens in Pennsylvania.*

*NOW THEREFORE, pursuant to the provisions of section 7301(c) of the Emergency Management Services Code, 35 Pa. C.S. § 7301(c), I do hereby order and direct as follows:*

1. *The Proclamation of Disaster Emergency dated March 6, 2020, renewed by Amendments to Proclamation of Disaster Emergency dated June 3, 2020, August 31, 2020, and*

2. *All directives, authorized actions and provisions of the March 6, 2020, Proclamation of Disaster Emergency and June 3, 2020, August 31, 2020, and November 24, 2020, Amendments to Proclamation shall remain in full force and effect until either rescinded by me or terminated by law.*

3. *This Proclamation Amendment (4th Amendment) shall take effect immediately.*



*GIVEN under my hand and the Seal of the Governor, at the city of Harrisburg, on this nineteenth day of February two thousand twenty-one, the year of the commonwealth the two hundred and forty-fifth.*

**TOM WOLF**
*Governor*

Exhibit 2

Pennsylvania Dept. of Revenue, *Masks and Ventilators*
(Apr. 23, 2020)



# Masks and Ventilators

Answer ID 3748    |    Published 04/23/2020 05:19 PM    |    Updated 04/23/2020 05:19 PM

### Are masks and ventilators subject to PA sales tax?

Protective face masks that are sold at retail are exempt from Pennsylvania sales tax during the emergency disaster declaration issued on March 6, 2020 by Governor Wolf. The emergency disaster declaration was issued in response to the COVID-19 pandemic.

Masks sold at retail are typically subject to Pennsylvania sales tax. However, during the emergency disaster declaration the Department of Revenue considers these protective masks to be akin to medical equipment.  Pennsylvania sales tax is not imposed on certain medical equipment or supplies, such as disposable surgical masks or ventilators.

Copyright � 2010 Pennsylvania Department of Revenue. All Right Reserved.

Commonwealth of PA Privacy Statement



Exhibit 3

Pennsylvania Dept. of Revenue, *Masks and Ventilators*

(updated Oct. 30, 2020)



# Masks and Ventilators

Answer ID 3748   |   Published 04/23/2020 05:19 PM   |   Updated 10/30/2020 08:42 AM

### Are masks and ventilators subject to PA sales tax?

No, face masks (cloth and disposable) are exempt from Pennsylvania sales tax. Prior to the COVID-19 pandemic, masks sold at retail were typically subject to Pennsylvania sales tax. However, masks (both cloth and disposable) could now be considered everyday wear/clothing as they are part of the normal attire. Generally speaking, clothing is not subject to Pennsylvania sales tax. Check the Retailer's Information Guide (REV-717) for a list of exceptions.

Copyright � 2010 Pennsylvania Department of Revenue. All Right Reserved.

Commonwealth of PA Privacy Statement



Exhibit 4

Pennsylvania Dept. of Revenue, *Sales and Tax Bulletin 2021-01* (Jan. 20, 2021)



## SALES AND USE TAX BULLETIN 2021-01

### Sales and use tax exemption for non-medical masks and face coverings

### Issued: January 20, 2021

### Effective Date: October 30, 2020

The Department of Revenue ("Department") issues this Sales and Use Tax Bulletin to inform persons responsible for charging, collecting and remitting sales tax of the tax treatment of non-medical masks and face coverings.

Medical supplies, including medical and disposable surgical masks, are exempt from Pennsylvania sales tax.  72 P.S. § 7204(17); Retailer's Information Guide (REV-717).  Prior to COVID-19, non-medical masks and face coverings were subject to sales tax because non-medical masks and face coverings were generally classified as ornamental wear or clothing accessories and the use for which consumers purchased non-medical masks and face coverings was not for an exempt purpose.  72 P.S. § 7204(26); Retailer's Information Guide (REV-717). Retailers were not obligated to determine whether a non-medical mask or face covering would be used for medical purposes because "[t]he determination that purchases qualify for exemptions as…medical supplies and the like, is based essentially upon the use for which the purchase are intended."  61 Pa. Code § 52.1(a).

On March 6, 2020, pursuant to the provisions of Subsection 7301(c) of the Emergency Management Services Code, 35 Pa. C.S. § 7101, *et seq.*, Governor Tom Wolf issued a Proclamation of Disaster Emergency in response to the COVID-19 pandemic, authorizing "all Commonwealth departments and agencies [to] utilize all available resources…as deemed necessary to cope with this emergency situation."  In response to consumer demand for medical masks outpacing supply and leading consumers to use non-medical masks and face coverings[1] for medical purposes, namely to prevent and control the spread of COVID-19, the department responded with a statement that any non-medical cloth or disposable mask purchased for use as a means of protection against the virus was not subject to sales or use tax.  Accordingly, the department will not assess retailers for failing to collect sales tax on purchases of non-medical masks and face coverings.  Additionally, consumers who can certify to the department that a cloth or disposable non-medical mask or face covering was purchased and used as a means of protection against the virus can petition the department for a refund of any sales or use tax paid.

As of October 30, 2020, in response to the ubiquitous use of non-medical masks and face coverings, the department recognizes that both cloth and disposable non-medical masks and face coverings are exempt from sales and use tax as everyday wear or clothing.

---

[1] The Pennsylvania Department of Health, in its November 17, 2020, Updated Order Requiring Universal Face Coverings, defines "face covering" as "covering of the nose and mouth with material that is secured to the head with ties, straps, or loops over the ears or is wrapped around the lower face."  It can be "made of a variety of synthetic or natural fabrics, including cotton, silk, or linen" and "may be factory-made, sewn by hand, or improvised from household items, including, but not limited to, scarfs, [or] bandanas."

Exhibit 5

Walgreens Receipt

VISA

grated chip card

YOU FOR SHOPPING

OU KNOW THAT YOU CA
OUSANDS OF ITEMS I
E? SEE OUR WEEKLY
MATION. ITEMS CHANG
CTIONS APPLY

Exhibit 6

Pennsylvania Dept. of Health, *Order of the Secretary of the Pennsylvania Department of Health Directing Public Health Safety Measures for Businesses Permitted to Maintain In-person Operations* (April 15, 2020)



# Order of the Secretary of the Pennsylvania Department of Health Directing Public Health Safety Measures for Businesses Permitted to Maintain In-person Operations

The 2019 novel coronavirus (COVID-19) is a contagious disease that is rapidly spreading from person to person in the Commonwealth of Pennsylvania. COVID-19 can be transmitted from people who are infected with the virus even if they are asymptomatic or their symptoms are mild, such as a cough. Additionally, exposure is possible by touching a surface or object that has the virus on it and then touching one's mouth, nose, or eyes.

COVID-19 is a threat to the public's health, for which the Secretary of Health may order general control measures, including, but not limited to, closure, isolation, and quarantine. This authority is granted to the Secretary of Health pursuant to Pennsylvania law. *See* Section 5 of the Disease Prevention and Control Law, 35 P.S. §§ 521.1, 521.5; sections 2102 and 2106 of the Administrative Code of 1929, 71 P.S. §§ 532, 536; and the Department of Health's (Department's) regulations at 28 Pa. Code §§ 27.60-27.68 (relating to disease control measures; isolation; quarantine; movement of persons subject to isolation or quarantine; and release from isolation and quarantine). Particularly, the Secretary has the authority to take any disease control measure appropriate to protect the public from the spread of infectious disease. *See* 35 P.S. § 521.5; 71 P.S. §§ 532(a), 1402(a); 28 Pa. Code § 28.60.

Recognizing that certain life-sustaining businesses in the Commonwealth must remain open despite the need for strong mitigation to slow the spread of the virus, I am ordering certain actions to be taken by employers and their employees to protect their health and lives, the health and lives of their families, and the health and lives of the residents of the Commonwealth who depend upon their services. Special consideration is required to protect not only customers, but the workers needed to run and operate these establishments.

As cleaning, disinfecting, and other maintenance and security services performed by building service employees are critical to protecting the public health by reducing COVID-19 infection in the Commonwealth, I previously directed building safety measures in an Order that went into effect at 12:01 a.m. on April 6, 2020. Similarly, based upon the manner of COVID-19's continued and extensive spread in the Commonwealth and in the world, and its danger to Pennsylvanians, I have determined that an additional appropriate disease control measure is the further direction of safety measures for all employees and visitors at life-sustaining businesses that have remained open during the COVID-19 disaster emergency.

Accordingly, on this date, April 15, 2020, to protect the public from the spread of COVID-19, I hereby order:

A. A business that is authorized to maintain in-person operations, other than health care providers, pursuant to the Orders that the Governor and I issued on March 19, 2020, as subsequently amended, shall implement, as applicable, the following social distancing, mitigation, and cleaning protocols:

(1) in addition to maintaining pre-existing cleaning protocols established in the business, as specified in paragraph (2) below, clean and disinfect high-touch areas routinely in accordance with guidelines issued by the Centers for Disease Control and Prevention (CDC), in spaces that are accessible to customers, tenants, or other individuals;

(2) maintain pre-existing cleaning protocols established by the business for all other areas of the building;

(3) establish protocols for execution upon discovery that the business has been exposed to a person who is a probable or confirmed case of COVID-19, including:

    a. close off areas visited by the person who is a probable or confirmed case of COVID-19. Open outside doors and windows and use ventilation fans to increase air circulation in the area. Wait a minimum of 24 hours, or as long as practical, before beginning cleaning and disinfection. Cleaning staff should clean and disinfect all areas such as offices, bathrooms, common areas including but not limited to employee break rooms, conference or training rooms and dining facilities, shared electronic equipment like tablets, touch screens, keyboards, remote controls, and ATM machines used by the ill person, focusing especially on frequently touched areas;

    b. identify employees that were in close contact (within about 6 feet for about 10 minutes) with a person with a probable or confirmed case of COVID-19 from the period 48 hours before symptom onset to the time at which the patient isolated;

        i. If the employee remains asymptomatic, the person should adhere to the practices set out by the CDC in its April 8, 2020 Interim Guidance for Implementing Safety Practice for Critical Infrastructure Workers Who May Have Had Exposure to a Person with Suspected or Confirmed COVID-19;

        ii. If the employee becomes sick during the work day, the person should be sent home immediately. Surfaces in the employee's workspace should be cleaned and disinfected. Information on other employees who had contact with the ill employee during the time the employee had symptoms

2

and 48 hours prior to symptoms should be compiled. Others at the workplace with close contact within 6 feet of the employee during this time would be considered exposed;

iii.  Promptly notify employees who were close contacts of any known exposure to COVID-19 at the business premises, consistent with applicable confidentiality laws;

iv.  ensure that the business has a sufficient number of employees to perform the above protocols effectively and timely;

c.  implement temperature screening before an employee enters the business, prior to the start of each shift or, for employees who do not work shifts, before the employee starts work, and send employees home that have an elevated temperature or fever of 100.4 degrees Fahrenheit or higher.  Ensure employees practice social distancing while waiting to have temperatures screened;

d.  employees who have symptoms (*i.e.*, fever, cough, or shortness of breath) should notify their supervisor and stay home;

e.  sick employees should follow CDC-recommended steps. Employees should not return to work until the CDC criteria to discontinue home isolation are met, in consultation with healthcare providers and state and local health departments. Employers are encouraged to implement liberal paid time off for employees who do not return to work as set forth above.

(4)  stagger work start and stop times for employees when practicable to prevent gatherings of large groups entering or leaving the premises at the same time;

(5)  provide sufficient amount of space for employees to have breaks and meals while maintaining a social distance of 6 feet, while arranging seating to have employees facing forward and not across from each other in eating and break settings;

(6)  stagger employee break times to reduce the number of employees on break at any given time so that appropriate social distancing of at least 6 feet may be followed;

(7)  limit persons in employee common areas (such as locker or break rooms, dining facilities, training or conference rooms) at any one time to the number of employees that can maintain a social distance of 6 feet;

3

(8)     conduct meetings and trainings virtually (*i.e.*, by phone or through the internet).  If a meeting must be held in person, limit the meeting to the fewest number of employees possible, not to exceed 10 employees at one time, and maintain a social distance of 6 feet;

(9)     provide employees access to regular handwashing with soap, hand sanitizer, and disinfectant wipes and ensure that common areas (including but not limited to break rooms, locker rooms, dining facilities, rest rooms, conference or training rooms) are cleaned on a regular basis, including between any shifts;

(10)   provide masks for employees to wear during their time at the business, and make it a mandatory requirement to wear masks while on  the work site, except to the extent an employee is using break time to eat or drink, in accordance with the guidance from the Department of Health and the CDC. Employers may approve masks obtained or made by employees in accordance with Department of Health guidance;

(11)   ensure that the facility has a sufficient number of employees to perform all measures listed effectively and in a manner that ensures the safety of the public and employees;

(12)   ensure that the facility has a sufficient number of personnel to control access, maintain order, and enforce social distancing of at least 6 feet;

(13)   prohibit non-essential visitors from entering the premises of the business; and

(14)   ensure that all employees are made aware of these required procedures by communicating them, either orally or in writing, in their native or preferred language, as well as in English or by a methodology that allows them to understand.

B.  In addition to the above, the following measures apply to  businesses, other than health care providers, that serve the public within a building or a defined area:

(1) where feasible, businesses should conduct business with the public by appointment only and to the extent that this is not feasible, businesses must limit occupancy to no greater than 50% of the number stated on the applicable certificate of occupancy at any given time, as necessary to reduce crowding in the business, and must maintain a social distance of 6 feet at check-out and counter lines, and must place signage throughout each site to mandate social distancing for both customers and employees;

4

(2) based on the building size and number of employees, alter hours of business so that the business has sufficient time to clean or to restock or both;

(3) install shields or other barriers at registers and check-out areas to physically separate cashiers and customers or take other measures to ensure social distancing of customers from check-out personnel, or close lines to maintain a social distance between of 6 feet between lines;

(4) encourage use of online ordering by providing delivery or pick-up options;

(5) designate a specific time for high-risk and elderly persons to use the business at least once every week if there is a continuing in-person customer-facing component;

(6) require all customers to wear masks while on premises, and deny entry to individuals not wearing masks, unless the business is providing medication, medical supplies, or food, in which case the business must provide alternative methods of pick-up or delivery of such goods; however, individuals who cannot wear a mask due to a medical condition (including children under the age of 2 years per CDC guidance) may enter the premises and are not required to provide documentation of such medical condition;

(7) in businesses with multiple check-out lines, only use every other register, or fewer. After every hour, rotate customers and employees to the previously closed registers. Clean the previously open registers and the surrounding area, including credit card machines, following each rotation;

(8) schedule handwashing breaks for employees at least every hour; and

(9) where carts and handbaskets are available for customers' use, assign an employee to wipe down carts and handbaskets before they become available to each customer entering the premises.

This Order shall take effect immediately and be enforceable as of 8:00 p.m. on April 19, 2020.

_____

Rachel Levine, MD
Secretary of Health

Exhibit 7

Pennsylvania Dept. of Health, *Order of the Secretary of Pennsylvania Department of Health Requiring Universal Face Coverings* (July 1, 2020)



# Order of the Secretary of the Pennsylvania Department of Health Requiring Universal Face Coverings

COVID-19 is a contagious disease that is rapidly spreading from person to person. People infected are capable of exposing others to COVID-19 even if their symptoms are mild, such as a cough, or even if they are asymptomatic. Additionally, exposure is possible by touching a surface or object that has the virus on it and then touching one's mouth, nose, or eyes. Symptoms of COVID-19 may include fever, cough, shortness of breath, chills, repeated shaking with chills, muscle pain, headache, sore throat, and new loss of taste or smell. Early symptoms may also include chills, body aches, sore throat, headache, diarrhea, nausea or vomiting, and runny nose. Older adults and people who have serious chronic medical conditions are at a higher risk for serious illness.

The first cases of COVID-19 were reported in the United States in January 2020. Since then, multiple areas of the United States have experienced "community spread" of COVID-19, meaning that the illness is being transmitted through unknown contact, and not from contacts with known cases. On March 6, 2020, after the first cases of COVID-19 in the Commonwealth of Pennsylvania were confirmed, the Governor issued a Proclamation of Disaster Emergency. Since that date, the number of positive cases has continued to rise, and community spread has continued in the Commonwealth as well. Case counts rapidly increased throughout the Commonwealth in March and April, 2020. As of July 1, 2020, every county in the Commonwealth has been affected, the number of cases is 87,242, and 6,687 individuals have died from COVID-19.

In order to slow the spread and protect the people of the Commonwealth, the Governor and I issued Orders on March 19, 2020, closing all Commonwealth businesses that are not life sustaining. *See Order of the Governor of the Commonwealth of Pennsylvania Regarding the Closure of All Businesses That Are Not Life Sustaining,* as amended; *Order of the Secretary of the Pennsylvania Department of Health Regarding the Closure of All Businesses That Are Not Life Sustaining*, as amended. On April 1, 2020, the Governor and I issued Orders directing all individuals in Pennsylvania to stay at home. *See Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home*, as amended; *Order of the Secretary of the Pennsylvania Department of Health to Stay at Home,* as amended.

In addition, I issued an Order on April 15, 2020, requiring mitigation measures to be applied at businesses that are permitted to engage in in-person operations, including a requirement that all customers wear masks while on premises of businesses that serve the public within a building or a defined area and directs businesses to deny entry to individuals not wearing masks, unless the business is providing medication, medical supplies, or food, in which case the business must provide alternative methods of pick-up or delivery of such goods. Individuals who cannot wear a mask due to a medical condition (including children under the age of 2 years per CDC guidance) are permitted to enter the premises and are not

required to provide documentation of such medical condition. *See Order of the Secretary of the Pennsylvania Department of Health Directing Public Health Safety Measures for Businesses Permitted to Maintain In-person Operations.*

Those mitigation efforts slowed the spread of the disease, protected our hospitals from being overwhelmed, and enabled our hospitals to care for our ill residents. Accordingly, in Orders on May 7, 2020, the Governor and I suspended restrictions for certain areas instituted in the orders on March 19, 2020, as amended, and April 1, 2020, as amended. *See Order of the Governor of the Commonwealth of Pennsylvania for Limited Opening of Business, Lifting of Stay at Home Requirements, and Continued Aggressive Mitigation Efforts, as amended; Order of the Secretary of the Pennsylvania Department of Health for a Limited Opening of Businesses, Lifting of Stay Home Requirements and Continued Aggressive Mitigation Efforts, as amended.*

These mitigation strategies, practiced by all persons in the Commonwealth, have been successful in slowing the spread of the virus, and have allowed the phased and considered reopening of the Commonwealth, *see Order of the Governor of the Commonwealth of Pennsylvania for the Continued Reopening of the Commonwealth of May 27, 2020, as amended; Order of the Secretary for the Continued Reopening of the Commonwealth of May 27, 2020,* as amended. Person-to-person spread does continue however, and with the reopening, the Commonwealth is beginning to see increases in new cases. Mindful of the need to slow this increase, in order to avoid the types of stringent Commonwealth-wide mitigation strategies that were discontinued a short time ago, and in order to avoid the resurgence that is overwhelming the health care systems and public health systems in other states, I am ordering that all persons in the Commonwealth wear face coverings in accordance with this Order. Face coverings can decrease the spread of respiratory droplets from people. *See* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html#recent-studies. When used in public settings, face coverings will work to reduce the spread of COVID-19 in the Commonwealth.

COVID-19 is a threat to the public's health, for which the Secretary of Health may order general control measures, including, but not limited to, closure, isolation, and quarantine. This authority is granted to the Secretary of Health pursuant to Pennsylvania law. *See* section 5 of the Disease Prevention and Control Law, 35 P.S. § 521.5; sections 2102(a) and 2106 of the Administrative Code of 1929, 71 P.S. §§ 532(a), and 536; and the Department of Health's regulations at 28 Pa. Code §§ 27.60-27.68 (relating to disease control measures; isolation; quarantine; movement of persons subject to isolation or quarantine; and release from isolation and quarantine). Particularly, the Department of Health has the authority to take any disease control measure appropriate to protect the public from the spread of infectious disease. *See* 35 P.S. § 521.5; 71 P.S. § 532(a), and 1403(a); 28 Pa. Code § 27.60.

Accordingly, on this date, July 1, 2020, to protect the public from the spread of COVID-19, I hereby order:

Section 1:    Face Coverings Defined

"Face covering" means a covering of the nose and mouth that is secured to the head with ties, straps, or loops over the ears or is wrapped around the lower face.  A "face covering" can be made of a variety of synthetic or natural fabrics, including cotton, silk, or linen.  For purposes of this order, a face covering includes a plastic face shield that covers the nose and mouth.  "Face coverings" may be factory-made, sewn by hand, or be improvised from household items, including but not limited to, scarfs, bandanas, t-shirts, sweatshirts, or towels.  While procedural and surgical masks intended for healthcare providers and first responders meet these requirements, such as N95 respirators, these specialized masks should be reserved for appropriate occupational and health care settings.

Section 2:    Face Coverings Required

Except as provided in Section 3, individuals are required to wear face coverings if they are:

A.  outdoors and unable to consistently maintain a distance of six feet from individuals who are not members of their household;

B.  in any indoor location where members of the public are generally permitted;

C.  waiting for, riding on, driving, or operating public transportation or paratransit or while in a taxi, private car service or ride-sharing vehicle;

D.  obtaining services from the healthcare sector in settings including, but not limited to, a hospital, pharmacy, medical clinic, laboratory, physician or dental office, veterinary clinic, or blood bank; or

E.  engaged in work, whether at the workplace or performing work off-site, when interacting in-person with any member of the public, working in any space visited by members of the public, working in any space where food is prepared or packaged for sale or distribution to others, working in or walking through common areas, or in any room or enclosed area where other people, except for members of the person's own household or residence, are present when unable to physically distance.

Section 3:    Exceptions to Face Covering Requirement

A.  The following are exceptions to the face covering requirement in Section 2:

i.    Individuals who cannot wear a mask due to a medical condition, including those with respiratory issues that impede breathing, mental health condition, or disability;

3

    ii.     Individuals for whom wearing a mask while working would create an unsafe condition in which to operate equipment or execute a task as determined by local, state, or federal regulators or workplace safety guidelines;

    iii.    Individuals who would be unable to remove a mask without assistance;

    iv.    Individuals who are under two years of age;

    v.    Individuals who are communicating or seeking to communicate with someone who is hearing-impaired or has another disability, where the ability to see the mouth is essential for communication;

    B.    Individuals are not required to show documentation that an exception applies.

Section 4:    Prior Orders

This Order is intended to be read in concert with my Order Relating to Public Health Safety Measures for Businesses Permitted to Maintain In-person Operations, dated April 15, 2020, and with the Governor's and my Orders for the Continued Reopening of the Commonwealth, dated May 27, 2020.

Section 5:    Effective Date

This Order is effective immediately and will remain in effect until further notice.

Rachel Levine, MD
Secretary of Health

4